05-0010-ag
Mizrahi v. Gonzales

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2005

(Argued: March 30, 2006                              Decided: June 27, 2007)

Docket No. 05-0010-ag

ALON MIZRAHI,

*Petitioner,*

—v.—

ALBERTO R. GONZALES,[*] Attorney General,

*Respondent.*

Before:

NEWMAN, KATZMANN, and RAGGI, *Circuit Judges*.

Israeli national Alon Mizrahi petitions for review of an order of removal.  Mizrahi

contends that the Board of Immigration Appeals erred in ruling that his 2002 New York State

conviction for fourth-degree solicitation to sell drugs in violation of the state's generic

solicitation statute, N.Y. Penal Law § 100.05(1), rendered him inadmissible to the United

---

[*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as respondent in this case.

1

States pursuant to Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act.

Petition for review denied.

---

SARITA KEDIA (Julie R. Jones, *on the brief*), Law Offices of Sarita Kedia, New York, New York, *for Petitioner*.

DAVID S. RUBENSTEIN, Assistant United States Attorney (Ramon E. Reyes, Jr., *on the brief*), *for* Michael J. Garcia, United States Attorney for the Southern District of New York, New York, New York, *for Respondent*.

---

REENA RAGGI, *Circuit Judge*:

Israeli national Alon Mizrahi petitions for review of a December 17, 2004 ruling by the Board of Immigration Appeals ("BIA") ordering him removed from the United States on the ground that, as an alien convicted of "a violation of . . . any law . . . relating to a controlled substance," he is rendered inadmissible to this country by Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1182(a)(2)(A)(i)(II)). See In re Alon Mizrahi, No. A76 145 735 (BIA Dec. 17, 2004), aff'g No. A76 145 735 (Immig. Ct. N.Y. City Dec. 12, 2003). The conviction at issue was the result of Mizrahi's 2002 New York State guilty plea to a misdemeanor offense, fourth-degree criminal solicitation of the sale of drugs, conduct proscribed by N.Y. Penal Law § 100.05(1) (McKinney 2004). Mizrahi contends that, because N.Y. Penal Law § 100.05(1) generically proscribes the solicitation of any felony crime, it cannot categorically qualify as a "law . . . relating to a controlled substance" under 8 U.S.C. § 1182(a)(2)(A)(i)(II). We disagree when,

2

as in Mizrahi's case, the solicitation has a drug crime as its specifically intended objective.

Accordingly, we deny the petition for review.

## I.   **Factual Background**

### A.   Mizrahi's New York State Conviction for Criminal Solicitation

Alon Mizrahi entered the United States as a 20-year-old visitor in 1989 and became a lawful permanent resident of this country in 2000. In 2001, Mizrahi was indicted in New York County together with fifteen other persons for conspiring to possess and distribute drugs. Mizrahi disposed of this charge by pleading guilty on April 2, 2002, to misdemeanor criminal solicitation in the fourth degree. See N.Y. Penal Law § 100.05(1). Pursuant to his plea agreement, Mizrahi admitted telephonically soliciting the sale of controlled substances — specifically, ecstasy tablets, hashish, and marijuana — from one of his co-defendants. The court sentenced him to three years' probation.

### B.   Mizrahi's Immigration Proceedings

Sometime after this conviction, Mizrahi traveled to Israel. Upon his return to the United States, federal immigration authorities at John F. Kennedy International Airport advised Mizrahi that he was ineligible for admission. On March 14, 2003, the Immigration and Naturalization Service ("INS")[1] initiated formal removal proceedings on the ground that

---

[1]All references to the INS refer to the organization now known as the Bureau of Immigration and Customs Enforcement ("ICE") within the Department of Homeland Security. The Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192 (codified at 6 U.S.C. §§ 202(3), 251), dissolved the INS and transferred its immigration law enforcement responsibilities to ICE. See Thapa v. Gonzales, 460 F.3d 323, 325 n.1 (2d

3

Mizrahi's state solicitation conviction rendered him inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II). Mizrahi moved to terminate the proceedings, arguing that the statute underlying his conviction, N.Y. Penal Law § 100.05(1), did not qualify as a "law . . . relating to a controlled substance," under 8 U.S.C. § 1182(a)(2)(A)(i)(II). Alternatively, he applied for a discretionary waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h).

On December 12, 2003, Immigration Judge ("IJ") Patricia A. Rohan denied Mizrahi's motion and ordered his removal. The IJ concluded that Mizrahi's first argument was foreclosed by the BIA's precedential decision Matter of Beltran, 20 I. & N. Dec. 521 (BIA 1992) (upholding deportation of alien convicted under generic Arizona solicitation statute for soliciting drug possession), and that he was ineligible for § 1182(h) relief.

Mizrahi appealed to the BIA, which, in an unpublished order, approved the IJ's reliance on Beltran and affirmed the order of removal. Mizrahi then timely petitioned for review by this court. His petition challenges only his inadmissibility pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II).

## II.    Discussion

### A.    Jurisdiction and Standard of Review

Under the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, this court lacks jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed [certain drug and aggravated felony] offense[s]," except insofar

Cir. 2006).

4

as review entails "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(C)-(D). Whether a conviction qualifies as a removable offense under a stated provision of the INA is a question of law. See Blake v. Gonzales, 481 F.3d 152, 155-56 (2d Cir. 2007).

To the extent that legal question requires us to construe state criminal law, we owe no deference to the BIA; our review is de novo. See Santos v. Gonzales, 436 F.3d 323, 325 (2d Cir. 2006). To the extent the question requires us to construe a provision of the INA, however, because the administration of that statute is entrusted to the BIA, our review follows the two-step process outlined in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

At Chevron step one, we consider de novo whether Congress has clearly spoken to the question at issue. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43; accord Chauffeur's Training Sch., Inc. v. Spellings, 478 F.3d 117, 125 (2d Cir. 2007). To ascertain Congress's intent, we begin with the statutory text because if its language is "unambiguous," no further inquiry is necessary. Robinson v. Shell Oil Co., 519 U.S. 337, 340-41 (1997); accord Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 423 (2d Cir. 2005). We presume that Congress "says in a statute what it means and means in a statute what it says." Dodd v. United States, 545 U.S. 353, 357 (2005). If the statutory language is ambiguous, however, we "resort first to canons of statutory construction, and, if the [statutory] meaning remains ambiguous, to legislative history," Daniel v. Am. Bd. of

5

Emergency Med., 428 F.3d at 423 (internal citations omitted), to see if these "interpretive clues" clearly reveal Congress's intent, General Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 586 (2004).

If we determine that "Congress has not directly addressed the precise question at issue," we proceed to Chevron step two, which instructs us to defer to an agency's interpretation of the statute, so long as it is "reasonable." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843-44; see, e.g., Michel v. INS, 206 F.3d 253, 262-63 (2d Cir. 2000) (deferring to BIA interpretation of "moral turpitude"); Zhang v. Slattery, 55 F.3d 732, 749-50 (2d Cir. 1995) (deferring to BIA interpretation of "persecution on account of . . . political opinion"). While unpublished BIA decisions do not constitute agency interpretations of law warranting Chevron deference, see Rotimi v. Gonzales, 473 F.3d 55, 57 (2d Cir. 2007), where, as in this case, the challenged unpublished decision relies on a binding published decision, Chevron deference will extend to that earlier decision's reasonable resolution of statutory ambiguity.

B.     Mizrahi's Inadmissibility Pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II)

1.     The Statutory Text

The INA provision at issue in this case states in relevant part:

[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible.

6

8 U.S.C. § 1182(a)(2)(A)(i)(II).

The plain language indicates Congress's intent to limit the statute's reach in two important respects. First, its focus is limited to "controlled substances," not other contraband or proscribed conduct. Second, it applies only if the "law or regulation" violated relates to controlled substances. This second limitation effectively demands a categorical identification of the applicable violations of law. See Vargas-Sarmiento v. United States Dep't of Justice, 448 F.3d 159, 166 (2d Cir. 2006) (observing that categorical approach focuses on "the minimum criminal conduct necessary to sustain a conviction" rather than on "the singular circumstances of an individual petitioner's crimes" (internal quotation marks omitted)); Kamagate v. Ashcroft, 385 F.3d 144, 152 (2d Cir. 2004) (and cases cited therein).

In other respects, however, the statutory language indicates Congress's intent to sweep broadly, applying to a violation of "any law or regulation," whether state, federal, or foreign, "relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i)(II) (emphases added). Indeed, the violation need not be reflected in an actual criminal conviction; it can be evidenced by an alien's admission to a violation of law relating to a controlled substance or simply to acts constituting the essential elements of such a violation. Further, as the Supreme Court has recognized, Congress's use of the phrase "relating to" in federal legislation generally signals its expansive intent. See, e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (observing, in context of Airline Deregulation Act of 1978, that dictionary definition of "relating to" is expansive: "'to stand in some relation; to have bearing

or concern; to pertain; refer; to bring into association with or connection with'" (quoting Black's Law Dictionary 1158 (5th ed. 1979))); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (applying similar "broad common-sense meaning" to phrase "relate to" as used in ERISA); accord Richards v. Ashcroft, 400 F.3d 125, 129 (2d Cir. 2005) (broadly construing phrase "offense relating to . . . forgery" as used in INA definition of aggravated felony, 8 U.S.C. § 1101(a)(43)(R)); Kamagate v. Ashcroft, 385 F.3d at 154 (same re: INA phrase "offense relating to . . . counterfeiting").

From this structure, we can conclude that, if a law defining an essential element of a crime relates to a controlled substance, the crime itself is a violation of law that renders an alien inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

## 2. Criminal Solicitation as a Ground for Inadmissibility

Mizrahi submits that his solicitation conviction cannot categorically qualify as "a violation of . . . any law . . . relating to a controlled substance" because N.Y. Penal Law § 100.05(1) generically proscribes the solicitation of any felony crime, whether or not involving drugs.[2]  Indeed, he asserts that Congress's clear intent not to have 8 U.S.C. § 1182(a)(2)(A)(i)(II) reach generic solicitation laws is evidenced by that statute's disjunctive

---

[2]N.Y. Penal Law § 100.05(1) states in relevant part:

A person is guilty of criminal solicitation in the fourth degree when:

1. with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct . . . .

8

reference to two other inchoate crimes, conspiracy and attempt, in the phrase "a violation of (or a conspiracy or attempt to violate) any law . . . relating to a controlled substance."

To explain why we are not persuaded by Mizrahi's arguments, we examine the text of § 1182(a)(2)(A)(i)(II) in two steps. Focusing first on its broad reference to "a violation of . . . any law . . . relating to a controlled substance," we consider whether a conviction pursuant to N.Y. Penal Law § 100.05(1) can ever qualify as a violation of such a law. Because we answer that question in the affirmative for solicitations, such as Mizrahi's, with drug objectives, we proceed to consider whether the statute's disjunctive parenthetical indicates that Congress nevertheless intended to exclude solicitation from the crimes that can support inadmissibility.[3] We conclude that Congress did not clearly address this issue in either § 1182(a)(2)(A)(i)(II), its deportability counterpart, see 8 U.S.C. § 1227(a)(2)(B)(i),[4]

---

[3]Separately examining first the "relating to" language and then the parenthetical not only clarifies our textual analysis but also is consistent with the evolution of the statute. As originally enacted, the relevant provisions of the INA contained only the "relating to" language. The references to specific inchoate crimes in the parenthetical were added by subsequent amendments. See infra at **[23-36]**.

[4]Section 1227(a)(2)(B)(i), like § 1182(a)(2)(A)(i)(II), contains both a reference to "a violation of . . . any law . . . relating to a controlled substance" and the disjunctive parenthetical "(or a conspiracy or attempt to violate)." It states:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i).

or their statutory predecessors. To the extent the BIA reasonably resolved this ambiguity in Matter of Beltran, 20 I. & N. Dec. at 528, by holding that drug solicitation crimes can render aliens deportable, we defer to that agency interpretation in construing identical language in the INA's inadmissibility provision.

a.      Solicitation of a Drug Crime as a "Violation of . . . Any Law . . . Relating to a Controlled Substance"

To determine whether Mizrahi's solicitation conviction qualifies as "a violation of . . . any law . . . relating to a controlled substance," we must first determine what state laws define the essential elements of his crime, i.e., the "minimum criminal conduct necessary to sustain [his] conviction." Vargas-Sarmiento v. United States Dep't of Justice, 448 F.3d at 166 (internal quotation marks omitted). We conclude that the elements of Mizrahi's crime are defined not only by N.Y. Penal Law § 100.05(1), which generically proscribes the solicitation of felony crimes, but also by N.Y. Penal Law § 220.31, which proscribes the specifically intended drug object of Mizrahi's solicitation.[5] To explain our reasoning, we discuss inchoate crimes generally before considering Mizrahi's particular solicitation.

(1)      Identifying the Elements of Inchoate Crimes

The law generally recognizes three inchoate crimes: conspiracy, attempt, and solicitation. See Black's Law Dictionary 1111 (8th ed. 2004); Herbert Wechsler et al., The

---

[5]N.Y. Penal Law § 220.31 (McKinney 2000) states: "A person is guilty of criminal sale of a controlled substance in the fifth degree when he knowingly and unlawfully sells a controlled substance. Criminal sale of a controlled substance in the fifth degree is a class D felony."

10

Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy, 61 Colum. L. Rev. 571, 572 (1961). For purposes of our analysis, a notable feature of these inchoate offenses is that the proscribed physical conduct — the solicitation, the attempt, or the concerted endeavor — is never criminal in the abstract. Rather, criminality arises only when the inchoate conduct has the violation of some other law as its specifically intended objective. See Wechsler at 572 (noting that conspiracy, attempt, and solicitation "always presuppose a purpose to commit another crime," i.e., the "object" crime (emphasis added)); Douglas N. Husak, Reasonable Risk Creation and Overinclusive Legislation, 1 Buff. Crim. L. Rev. 599, 603 (1998) (observing that "[t]o charge a defendant with having committed" an inchoate crime "presupposes an object offense that is attempted, solicited, or is the object of the conspiracy").

Thus, while inchoate conduct may be prohibited in relatively short generic statutes, see Ira P. Robbins, Double Inchoate Crimes, 26 Harv. J. Legis. 1, 4 (1989) (noting that "[r]ather than try to enumerate every act to which inchoate liability attaches," legislatures frequently enact "relatively short statutes containing abstract conceptual terms with universal application"), such statutes do not, by themselves, define the violation of law. Rather, a second object statute is necessary to supply the critical mens rea element that makes inchoate conduct criminal. The object offense need not be consummated for a defendant to be convicted of an inchoate crime. See Andrew Ashworth, Principles of Criminal Law 444 (5th ed. 2006) ("An attempt fails, a conspiracy comes to nothing, words of incitement [or

11

solicitation] are ignored, . . . [nevertheless], there may be liability for the inchoate crime."). But no conviction can be obtained for an inchoate offense unless a defendant ties his conduct to the criminally proscribed object of another statute through his specific intent. See generally Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 552 (2001) (observing that "common inchoate offenses" such as conspiracy, attempt, and solicitation "attach to [other] criminal conduct" (emphasis added)). At that point, a defendant is guilty not of generic conspiracy, but of conspiracy to murder; not of generic attempt, but of attempt to kidnap; not of generic solicitation, but of solicitation to sell drugs.

        (2)     The Elements of Mizrahi's Criminal Solicitation Are Defined by Both N.Y. Penal Law § 100.05(1) and § 220.31

Consistent with these general principles, we conclude that the crime of conviction in this case, Mizrahi's solicitation of a drug sale, is defined under New York law by two statutes: N.Y. Penal Law § 100.05(1) and § 220.31. A defendant cannot be convicted of criminal solicitation at any degree level in New York merely upon proof that he importuned another person to engage in general wrongdoing. The evidence must establish the defendant's specific intent to solicit the commission of a particular crime. This required nexus to an object crime is evident from New York's Criminal Jury Instructions, which require that juries be charged as to both the specific object crime of an alleged solicitation and that crime's statutory definition. See Criminal Jury Instructions New York §§ 100.00-100.13 (2d ed.), http://www.nycourts.gov/cji/ (last visited May 30, 2007). The second step

12

is necessary because the specific intent element of solicitation cannot be determined by the jury except by reference to the statutory definition of the object crime. See id.;[6] see also People v. Cheathem, 239 A.D.2d 595, 596, 658 N.Y.S.2d 84, 85 (2d Dep't 1997) (noting that "essential element" of criminal solicitation in whatever degree "is proof that the defendant acted with the intent that [someone] commit the underlying crimes").

Thus, for purposes of categorical analysis under the INA, New York's generic proscription on solicitation might usefully be analogized to a divisible statute because the crime cannot be proved, even at a "minimum," by reference only to § 100.05(1); other

---

[6]The pattern instruction for a violation of N.Y. Penal Law § 100.05(1) provides for a jury to be told that the prosecution must prove two elements:

1.     That on or about *(date),* in the County of *(county)*, the defendant, *(defendant's name)*, solicited, requested, commanded, importuned, or otherwise attempted to cause another person, namely *(specify)*, to engage in conduct constituting a felony, namely *(specify)*; and

2.     That the defendant did so with the intent that *(specify)* engage in that conduct.

Criminal Jury Instructions New York § 100.05(1), at 2 (2d ed.), http://www.nycourts.gov/cji/ (last visited May 30, 2007). To facilitate the jury's understanding of the intent element, the Pattern Instruction provides the following charge:

Under our law, *(specify the solicited felony)* is a felony. A person is guilty of *(specify the solicited felony)*, when *(read the applicable portion of the statutory definition of the solicited felony)*.

Id. at 1. In short, a defendant cannot be convicted of fourth-degree solicitation in New York unless the jury is convinced beyond a reasonable doubt that he specifically intended for some person to engage in a particular felony crime. That requisite intent can only be understood by reference to the statutory definition of the object felony.

statutes must be consulted on the element of intent, "some, but not all, of which would categorically constitute" laws relating to controlled substances. <u>Vargas-Sarmiento v. United States Dep't of Justice</u>, 448 F.3d at 166-67 (and cases cited therein discussing categorical assessment of subparts of divisible statutes). Had New York expressly listed in Penal Law § 100.05(1) every felony crime that could be the object of fourth-degree solicitation, we would not hesitate to conclude that the statutory subpart proscribing solicitation to sell drugs was a law relating to a controlled substance.[7] We are satisfied that what New York has not done expressly, it has nevertheless done effectively. Because every solicitation conviction in New York depends on two statutes to define the minimum conduct proscribed — the generic statute which defines the <u>actus reus</u> element and the object statute which defines the <u>mens rea</u> element — when, as in Mizrahi's case, the intent element is supplied by a statute defining the defendant's objective to be a drug crime, the solicitation conviction categorically constitutes "a violation of . . . any law . . . relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i)(II).

In reaching this conclusion, we follow precedent established the last time this court considered whether a generic inchoate crime "related to" a controlled substance under the INA. In <u>Bronsztejn v. INS</u>, 526 F.2d 1290, 1291 (2d Cir. 1975), we described a New York

---

[7]Similarly, if a jurisdiction were to include a subpart in its substantive drug statutes that proscribed conspiracies, attempts, or solicitations to engage in the proscribed activity, we would conclude that the inchoate, not less than the choate, part of the statute was a law relating to controlled substances.

14

conviction for attempted marijuana possession as a violation of both the state's generic attempt statute, N.Y. Penal Law § 110.00, and the object marijuana possession statute, id. § 220.05, thereby rendering an alien deportable under 8 U.S.C. § 1251(a)(11) (1970).[8] There we implicitly recognized what we make explicit today: that an inchoate offense cannot be isolated from the object statute that defines the crime's specific intent. See Bronsztejn v. INS, 526 F.2d at 1292 (citing approvingly to United States v. Rosenson, 291 F. Supp. 874, 878-79 (E.D. La. 1968) aff'd, 417 F.2d 629 (5th Cir. 1969), which recognized that crime of attempt cannot be segregated from its criminal objective and classified as a general offense).

Our analysis also comports with that of the Fifth Circuit in Peters v. Ashcroft, 383 F.3d 302 (5th Cir. 2004). In Peters, the petitioner asserted that his Arizona conviction for soliciting the transportation of marijuana for sale could not qualify as a violation of law "relating to a controlled substance" under the INA deportability provision, 8 U.S.C. § 1227(a)(2)(B)(i). The Fifth Circuit rejected the argument, noting that a person could not be convicted under Arizona's generic felony solicitation statute, Ariz. Rev. Stat. § 13-1002, without the specific intent to have some other person commit an underlying felony, see Peters v. Ashcroft, 383 F.3d at 306. Because the underlying felony defining Peters's requisite intent related to marijuana trafficking, the court concluded that the "nexus" required by the INA

---

[8]The provision in force at the time of Bronsztejn rendered deportable an alien who "at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs." 8 U.S.C. § 1251(a)(11) (1970); see infra at **[28-31]** (discussing this provision in context of legislative history).

15

"between the statute of conviction and controlled substance regulations or laws" was established. Id. at 307.

Although Peters's judgment of conviction specifically cited both the state's generic solicitation statute and the object drug statute, see id. at 306, whereas Mizrahi's references only the former, no different result is warranted. Mizrahi does not challenge the validity of his New York conviction, and that conviction could not have been obtained without proof of specific intent to importune a particular object felony. Pursuant to his plea agreement, Mizrahi supplied that proof when he admitted intentionally soliciting the sale of various drugs, a criminal objective clearly proscribed by N.Y. Penal Law § 220.31. See generally Dickson v. Ashcroft, 346 F.3d 44, 53 (2d Cir. 2003) (observing that record of conviction includes plea agreement for purpose of removability under INA).

Accordingly, because Mizrahi's specific intent in committing solicitation was to induce a drug sale, his crime of conviction is defined, at a minimum, by both N.Y. Penal Law § 100.05(1) and § 220.31 and, as such, constitutes "a violation of . . . any law . . . relating to a controlled substance."

b. The Effect of the Parenthetical "(or a Conspiracy or Attempt to Violate)"

(1) The Statutory Language Is Ambiguous in Conveying Congress's Intent

Because we conclude that an inchoate crime with a drug objective, such as Mizrahi's solicitation conviction, falls within the broad statutory language referencing a "violation of

. . . any law . . . relating to a controlled substance," we must consider whether Congress nevertheless expressed its clear intent for a narrower construction when it referenced certain inchoate crimes in the disjunctive parenthetical "(or a conspiracy or attempt to violate)." Indeed, we must consider whether the parenthetical's reference to only two of the three common inchoate crimes indicates Congress's clear intent to exclude solicitation as a ground for inadmissibility under § 1182(a)(2)(A)(i)(II).

The Ninth Circuit reached the latter conclusion in analyzing identical language in a predecessor version of the INA's drug deportability provision, 8 U.S.C. § 1251(a)(2)(B)(i) (1994) (subsequently recodified at 8 U.S.C. § 1227(a)(2)(B)(i)). See Coronado-Durazo v. INS, 123 F.3d 1322, 1325 (9th Cir. 1997) ("The plain language of [the statute] limits convictions for generic crimes that may result in deportation to conspiracy and attempt. Simply put, solicitation is not on the list."). Mizrahi urges us to follow suit with respect to inadmissibility. We are not convinced, however, that such congressional intent can clearly be discerned from the parenthetical language in these parallel provisions.

The strongest support for construing the parenthetical to limit the reach of these provisions is Congress's use of the word "or" at the start. It is a standard canon of statutory construction that words separated by the disjunctive are intended to convey different meanings unless the context indicates otherwise. See, e.g., Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). The canon usefully serves to avoid interpretations that render statutory terms superfluous. See id. Thus, Congress's disjunctive reference to two inchoate crimes

17

in the parenthetical might be construed to indicate its intent (a) that no inchoate drug crimes be included in the statute's otherwise broad reference to "a violation of . . . any law . . . relating to a controlled substance," and (b) that only the specifically referenced inchoate crimes of conspiracy and attempt — not solicitation — support inadmissibility.

However plausible this construction, we cannot conclude simply from the use of the word "or" that "Congress has directly spoken to the precise question at issue," Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 842-43, i.e., whether the solicitation of drug crimes renders an alien inadmissible. The rule that disjunctive phrases bear different meanings is general, not absolute. See, e.g., McNally v. United States, 483 U.S. 350, 358-60 (1987) (declining to apply independent constructions to disjunctive phrases of mail fraud statute); see generally 1A Norman J. Singer, Statutes and Statutory Construction § 21:14, at 179-91 (6th ed. 2002) (discussing general rule and departures from it). Thus, even outside the context of Chevron analysis, courts resolving difficult issues of construction will consider how a disjunctive or conjunctive form fits into the statutory scheme as a whole. See Kelly v. Wauconda Park Dist., 801 F.2d 269, 270 n.1 (7th Cir. 1986) (observing that courts must not "rely too heavily on characterizations such as 'disjunctive' form versus 'conjunctive' form to resolve difficult issues of statutory construction," but instead must "look at all parts of the statute").

As we have already observed, in this case, the statute's non-parenthetical language referencing "a violation . . . of any law . . . relating to a controlled substance" is sufficiently

18

broad, on its face, to include inchoate crimes. Construing the parenthetical to allow only two inchoate crimes, conspiracy and attempt, to stand as grounds for inadmissibility risks bringing the statute into tension with itself. We would have to conclude that Congress intended violations of any laws relating to controlled substances to support inadmissibility <u>except</u> inchoate crimes <u>except</u> for the inchoate crimes of conspiracy and attempt. Such stacking exceptions would be a curious way for Congress to express an intent to exclude solicitation, even with a drug crime objective, as a ground for inadmissibility.

Indeed, the first exception — purportedly excluding <u>all</u> inchoate crimes from the phrase "a violation of . . . any law . . . relating to a controlled substance" — would be difficult to reconcile with federal law, which does not employ generic statutes to proscribe inchoate crimes with drug objectives but, instead, relies on specific sections of the Uniform Controlled Substances Act. <u>See</u> 21 U.S.C. §§ 846, 963.[9] Precisely because these sections

---

[9]Section 846 states:

Any person who attempts or conspires to commit any offense defined in this subchapter [proscribing unauthorized manufacture, distribution, and possession of controlled substances and activities related thereto] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Section 963 states:

Any person who attempts or conspires to commit any offense defined in this subchapter [proscribing unauthorized importation and exportation of controlled substances and activities related thereto] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

19

proscribe conspiracies or attempts to violate <u>only</u> drug laws, we could not sensibly conclude that they do not fit within the broad phrase "any law . . . relating to a controlled substance." They can relate to nothing else.

To the extent Mizrahi urges us to read the parenthetical to exclude at least <u>generic</u> inchoate statutes from the broad "relating to" language, that argument is difficult to reconcile with <u>Bronsztejn v. INS</u>, 526 F.2d at 1290, discussed <u>supra</u> at **[14-15]**.[10] The version of the INA deportability provision at issue in <u>Bronsztejn</u> rendered deportable an alien who "at any time has been convicted of a violation of, <u>or a conspiracy to violate</u>, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marijuana." 8 U.S.C. § 1251(a)(11) (1970) (emphasis added). Without discussing the possible limiting effect of the highlighted disjunctive reference to the inchoate crime of conspiracy, this court observed that "Congress intended a stringent deportation policy regarding drug offenders," and we ruled that the "broad statutory language" extended to the unmentioned inchoate crime of attempted drug possession. <u>Bronsztejn v. INS</u>, 526 F.2d at 1292.[11]

---

[10]While <u>Bronsztejn</u> supports our decision, we do not consider it controlling because it addressed a different inchoate crime (attempt rather than solicitation) at a different stage in the statutory evolution (discussed <u>infra</u> at **[28-31]**) and before the articulation of the <u>Chevron</u> doctrine that guides our review.

[11]Mizrahi observes that in <u>United States v. Liranzo</u>, 944 F.2d 73, 79 (2d Cir. 1991), this court ruled that criminal facilitation, in violation of N.Y. Penal Law § 115.05 (McKinney 1987), did not qualify as a "controlled substance offense" under the federal Sentencing Guidelines. Unlike the INA inadmissibility provision here at issue, however, the Sentencing Guidelines do not use the expansive "relating to" phrase in defining "controlled substance offense." <u>See</u> <u>id.</u> at 78 (quoting U.S.S.G. § 4B1.2(2) & cmt. n.1). <u>Liranzo</u> is further distinguished by the fact that we review a district court's interpretation of the Guidelines <u>de</u>

*Bronsztejn*'s conclusion may find added support in the punctuation employed to set off disjunctive references to inchoate crimes in the INA. In the provision at issue in *Bronsztejn*, the disjunctive reference to "conspiracy" was set off by commas. This court has previously recognized that such punctuation may indicate that a disjunctive phrase was not intended to have a distinct meaning from, but rather to illustrate or stand in apposition to, preceding language. Cf. United States v. Barrow, 400 F.3d 109, 118 (2d Cir. 2005) (observing that when words are "'connected by "or" . . . and when no commas set off the second word to suggest that it stands in apposition to the first, we construe the disjunctive word to convey different meanings'" (quoting Collazos v. United States, 368 F.3d 190, 199 (2d Cir. 2004)). Parentheticals can be used to the same effect. See Lawrence E. Filson, The Legislative Drafter's Desk Reference 280-81 (1992); see also Peters v. Ashcroft, 383 F.3d at 309 (holding that parentheses "reduced the grammatical import" of the parenthetical reference to conspiracy and attempt in the INA's parallel deportability provision). Thus, the disjunctive parenthetical here at issue need not be assigned a different meaning from the preceding language to avoid being surplusage; it can reasonably be construed to illustrate or explain the broader proposition.

That being said, Congress certainly could have used clearer language and punctuation in § 1182(a)(2)(A)(i)(II) if its intent was to use the disjunctive form merely to illustrate the broad scope of the phrase "a violation . . . of any law . . . relating to a controlled substance."

_____

novo, see id. at 79, but extend Chevron deference to the BIA's interpretation of the INA.

See Filson at 280-81 (noting that legislative parentheticals can be substantive as well as explanatory). But it could also have used clearer language if its intent was to limit this phrase to exclude solicitation crimes. Accordingly, we conclude that the disjunctive parenthetical in § 1182(a)(2)(A)(i)(II) gives rise to an ambiguity as to whether Congress intended that unspecified inchoate crimes, such as solicitation, could render an alien inadmissible.

(2)    Legislative History Does Not Resolve the Textual Ambiguity

The Attorney General urges us to resolve the identified ambiguity in § 1182(a)(2)(A)(i)(II), consistent with the second step of Chevron analysis, by deferring to the BIA's conclusion in Matter of Beltran, 20 I. & N. Dec. at 528, which was relied on by the agency in finding Mizrahi inadmissible. While we ultimately agree that such deference is warranted, we must first explain why legislative history does not permit us to resolve the statutory ambiguity at Chevron step one.

Generally, this court has been reluctant to employ legislative history at step one of Chevron analysis. See Coke v. Long Island Care at Home, Ltd., 376 F.3d 118, 127 & n.3 (2d Cir. 2004), vacated on other grounds, 546 U.S. 1147 (2006). We recognize, of course, that in General Dynamics Land Systems, Inc. v. Cline, the Supreme Court stated that statutory "structure, purpose, and history" are properly considered at Chevron step one, but the Court was able to resolve ambiguity convincingly in that case because the "interpretive clues [spoke] almost unanimously," making Congress's intent clear "beyond reasonable doubt."

22

540 U.S. at 600, 586, 590.  That certainly is not this case.

Nevertheless, we outline the relevant legislative history in some detail in light of a contrary conclusion suggested by the BIA itself in Matter of Hou, 20 I. & N. Dec. 513 (BIA 1992), a case decided on the same day by the same panel as Beltran.[12]  In Hou, the BIA relied on a fragment of legislative history relating to the INA's drug deportability provision in concluding that Congress did not understand unspecified inchoate crimes to constitute grounds for deportation.  See id. at 518-19.[13]  In fact, the legislative history is considerably more extensive and ambiguous than Hou suggests.

> (a)     1931: Rendering Aliens Convicted of Specified Drug Violations Deportable

In 1931, Congress amended the Immigration Act of 1917 to render deportable aliens

---

[12]Curiously, neither case acknowledges the other.

[13]The history cited in Hou, H.R. Rep. No. 101-681(I) (1990), as reprinted in 1990 U.S.C.C.A.N. 6472, 6555-56, is discussed infra at **[33-35]**.  The BIA relied on its interpretation of the INA's drug deportability provision in determining the issue actually raised in Hou: whether a conviction for attempted firearms possession rendered an alien deportable under the INA's firearms deportability provision, 8 U.S.C. § 1251(a)(2)(C)(Supp. II 1990).  Not insignificantly, the firearms provision fails to include the broad "relating to" reference that was critical to Beltran's holding in a case in which that language was actually at issue.  See Matter of Beltran, 20 I. & N. Dec. at 526 (collecting cases going back half a century consistently construing the phrase "relating to" as an indication that "Congress meant" for this language to encompass even unspecified inchoate offenses "when the underlying substantive crime involves a drug offense").  Thus, Hou's construction of the INA's drug deportability provision is reasonably understood as dicta and entitled to considerably less weight than Beltran.

convicted of drug trafficking.[14] That amendment stated, in relevant part:

> That any alien (except an addict who is not a dealer in, or peddler of, any of the narcotic drugs mentioned in this Act) who, after the enactment of this Act, shall be convicted and sentenced for <u>violation of or conspiracy to violate</u> any statute of the United States taxing, prohibiting, or regulating the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, or any salt, derivative, or preparation of opium or coca leaves, shall be taken into custody and deported . . . .

Act of Feb. 18, 1931, Pub. L. No. 71-683, 46 Stat. 1171 (emphasis added).

As the highlighted language indicates, Congress initially used the disjunctive form to ensure the deportability of aliens convicted of both substantive and conspiratorial violations of the referenced statutes. It mentioned no inchoate crime other than conspiracy. It did not set off the conspiracy phrase with commas or parentheses to suggest that it stood in apposition to or merely illustrated the term "violation." Moreover, it specifically required that the violated statute "tax," "prohibit," or "regulate" specified drug activities; it was not enough for the statute to "relate to" controlled substances. This textual structure might suggest that, in 1931, Congress intended "violation" to refer only to the specifically catalogued substantive acts, with conspiracy being the only inchoate crime supporting deportation. This statutory scheme, however, was displaced in 1952 with the enactment of the INA.

---

[14]Because Congress has included the same ambiguous disjunctive parenthetical in both the INA's drug inadmissibility provision, § 1182(a)(2)(A)(i)(II), and its drug deportability provision, § 1227(a)(2)(B)(i), we track the evolution of both in our effort to discern Congress's intent.

24

(b)     1952: Enactment of the INA

The INA effected a comprehensive revision in federal immigration law.  INA § 212(a)(23), the predecessor of the inadmissibility provision here at issue, rendered excludable, <u>inter alia</u>:

> [a]ny alien [1] who has been convicted of a violation of <u>any law or regulation relating to the illicit traffic in narcotic drugs</u>, or [2] who has been convicted of a violation of any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, or any salt derivative or preparation of opium or coca leaves, or isonipecaine or any addiction-forming or addiction-sustaining opiate . . . .

INA, Pub. L. No. 82-414, § 212(a)(23), 66 Stat. 163, 184 (1952) (emphasis added).

Employing almost identical language, Section 241(a)(11) of the INA rendered deportable, <u>inter alia</u>, any alien:

> [1] who at any time has been convicted of a violation of <u>any law or regulation relating to the illicit traffic in narcotic drugs</u>, or [2] who has been convicted of a violation of any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate.

<u>Id.</u> § 241(a)(11), at 66 Stat. at 206-07 (emphasis added).

The language of these provisions indicates Congress's intent to sweep broadly, a conclusion supported by the legislative history.  The final House Report states that one of the

25

basic changes effected by the INA was to "broaden[] the grounds for exclusion and deportation of criminal aliens." H.R. Rep. No. 82-1365, at 28 (1952), as reprinted in 1952 U.S.C.C.A.N. 1653, 1679. Thus, the first criterion for inadmissibility and deportability applies to aliens convicted of "any law or regulation," not simply federal law. Further, the laws at issue are not limited to those catalogued in the 1931 statute. Rather, they can be any laws "relating to" narcotics trafficking. Although Congress employed the disjunctive to reiterate and expand the 1931 list of drug activities proscribed by law, its goal appears to have been to ensure completeness rather than to identify a separate and distinct category of violations because it is difficult to envision a violation of law "governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, [or] exportation of narcotics" that would not also qualify as a violation of law "relating to" narcotics trafficking.[15]

At the same time, however, in these 1952 provisions, Congress referenced only "a violation of law." It did not repeat the 1931 statute's disjunctive reference to "a conspiracy to violate" specified laws. Nothing in the legislative history indicates whether Congress expected inchoate drug crimes to come within the new broad reference to violations of law "relating to" narcotics trafficking or whether it sought to limit the grounds for inadmissibility and deportability to substantive crimes. We note only that the latter possibility appears

_____

[15]Indeed, this conclusion finds support in Congress's 1986 elimination of the list of specific drug crimes from the INA and its reliance only on the broad reference to "any law or regulation relating to" controlled substances. See infra at [31].

26

somewhat at odds with the statute's overall expansive purpose.

In 1954 and 1955, the BIA attempted to resolve this ambiguity in two cases involving aliens confronting deportation based on convictions for inchoate drug crimes. In Matter of G, 6 I. & N. Dec. 353, 354 (BIA 1954), the BIA concluded, with little discussion, that a conviction for attempted possession of narcotics with intent to distribute subjected an alien to deportation. A few months later, however, in Matter of N, 6 I. & N. Dec. 557, 559 (BIA 1955), the BIA reached a different conclusion with respect to a conviction for narcotics conspiracy in violation of the federal generic conspiracy statute, 18 U.S.C. § 371 (1952).[16] Noting Congress's explicit inclusion of conspiracy violations in the 1931 deportability statute and their omission from the 1952 statute, the BIA decided (with no mention of Matter of G) that "conspiracy does not constitute a conviction of a violation of a law relating to the illicit traffic in narcotics drugs." Matter of N, 6 I. & N. Dec. at 559.

On review of Matter of N, the Attorney General reversed. See 6 I. & N. Dec. at 561 (A.G. 1955). Acknowledging that a § 371 conspiracy was a separate and distinct crime from the offense that was the conspiracy's objective, the Attorney General nevertheless ruled that the "controlling phrase" in the INA's deportability provision was "relating to," which "[o]n

_____

[16]Section 371 stated:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

27

its face . . . is broad enough to cover a conviction for conspiracy to violate the narcotic laws." Id. In so holding, the Attorney General cited a Subcommittee Report of the Senate Judiciary Committee as evidence of legislative intent "to broaden the coverage of the immigration laws with respect to aliens convicted of laws 'pertaining to narcotics.'" Id. (citing S. Rep. No. 81-1515, at 375 (1950)).

Thus, it appears that over fifty years ago, Matter of G and Matter of N established the administering agency's construction of the phrase "relating to" — used in both the INA's deportability and inadmissibility provisions pertaining to drug crimes — as sufficiently broad to extend to inchoate violations of law when the underlying object is a drug crime.

(c)     The 1956 Amendments

Soon after Matter of N, Congress amended the INA's inadmissibility and deportability provisions to replace the phrase "convicted of a violation of any law" with the phrase "convicted of a violation of, or a conspiracy to violate, any law." Narcotic Control Act of 1956, Pub. L. No. 84-728, § 301(a), 70 Stat. 567, 575 (emphasis added). While the highlighted disjunctive language might indicate Congress's intent to exclude inchoate crimes, except for conspiracy, from the statute's broad reference to convictions for "a violation of . . . any law . . . relating to" narcotics trafficking, because this disjunctive phrase, in contrast to that enacted in 1931, is set off by commas, it could also be construed as simply an illustration of the intended breadth of "relating to," consistent with the recent agency ruling in Matter of N. See supra at **[21]**.

28

The legislative history on this point is not clear.  Committee reports indicate that the amendment "includ[ed] conspiracy to violate a narcotic law, and the illicit possession of narcotics, as <u>additional</u> grounds for excluding [or deporting] any alien."  H.R. Rep. No. 84-2546, at 17 (1956) (Conf. Rep.), <u>as reprinted in</u> 1956 U.S.C.C.A.N. 3315, 3321 (emphasis added); <u>see also</u> S. Rep. No. 84-1997, at 16 (1956) (observing that amendment "include[s] conspiracy to violate a narcotic law, and the illicit possession of narcotics as <u>additional</u> grounds for excluding [or deporting] any alien" (emphasis added)).  While the term "additional" suggests more than a clarifying illustration, we hesitate to assign the word determinative weight as an indicator of legislative intent.  Precisely because <u>Matter of N</u> had already held the statute to reach conspiracy, we cannot determine whether members of Congress supported the amendment because they thought conspiracy was otherwise excluded from the statutory language or because they thought the amendment usefully clarified already broad language.

Our ability to discern Congress's intent is further complicated by ambiguities in the supporting letters of the Justice Department, which apparently proposed the amendment, and the INS.[17]  The Justice Department letter states:

---

[17]<u>See</u> Letter from J.M. Swing, INS Commissioner, to Hon. Price Daniel, Chairman, Subcommittee for the Improvement of the Federal Criminal Code, Committee of the Judiciary, United States Senate (May 1, 1956), <u>as reprinted in</u> S. Rep. No. 84-1997, at 22 (1956) (noting that the amendment was "in conformity with one of the recommendations of the Attorney General" made pursuant to the special message of President Eisenhower to Congress on immigration matters delivered February 8, 1956).

> [S]ection 212(a)(23) [regarding inadmissibility] specifically covers only substantive violations of the narcotic laws and regulations; it is silent with respect to convictions of conspiracy to violate those laws and regulations. Section 201(a) would amend section 212(a)(23) to cure these deficiencies.
>
> Section 201(b) of the bill makes corresponding changes in section 241(a)(11) of the 1952 act [regarding deportability]. Like section 212(a)(23), section 214(a)(11) is silent with respect to convictions of conspiracy to violate the narcotics laws.

Letter from William P. Rogers, Deputy Attorney General, to Hon. Price Daniel, Chairman, Subcommittee for the Improvement of the Federal Criminal Code, Committee of the Judiciary, United States Senate (May 4, 1956), as reprinted in S. Rep. No. 84-1997, at 17 (1956). While the letter implies that the amendment was necessary to fill a statutory gap, this seems curious in light of the Attorney General's own ruling in Matter of N that narcotics conspiracies already qualified as crimes "relating to" drug trafficking under the 1952 Act. Thus, the letter might also be read to urge Congress to remove any ambiguity on this point created by the statute's "specific[]" reference to substantive violations and its "silen[ce] with respect to convictions of conspiracy." Such a reading is consistent with a supporting letter from the INS indicating that the amendment usefully "strengthens and clarifies" the INA's existing inadmissibility and deportability provisions. Letter from J.M. Swing, INS Commissioner, to Hon. Price Daniel, Chairman, Subcommittee for the Improvement of the Federal Criminal Code, Committee of the Judiciary, United States Senate (May 1, 1956), as reprinted in S. Rep. No. 84-1997, at 22 (1956). But that hardly allows us to determine Congress's clear intent.

30

Almost twenty years after the 1956 amendments, in 1974, the BIA ruled that the inchoate crime of "attempt," not then specifically mentioned in the INA's drug inadmissibility or deportability provisions, qualified as a violation of law "relating to" narcotics trafficking when the object of the attempt was illicit drug possession. See Matter of Bronsztejn, 15 I. & N. Dec. 281 (BIA 1974). The BIA had already reached this conclusion twenty years earlier in Matter of G, 6 I. & N. Dec. 353. The significance of Bronsztejn is that the BIA reiterated this conclusion after Congress had explicitly inserted a disjunctive reference to conspiracy in the statute. As discussed, supra at **[14-15]**, our court affirmed this construction of the statute in Bronsztejn v. INS, 526 F.2d 1290.

### (d)    The 1986 Amendments

Bronsztejn triggered no congressional response. When, more than a decade later, in 1986, Congress enacted identical amendments to the INA's inadmissibility and deportability provisions, it provided simply that "any law or regulation" would thereafter read "any law or regulation of a State, the United States, or a foreign country." Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 1751(a)-(b), 100 Stat. 3207, 3207-47. Congress further replaced both the statutory reference to narcotics trafficking and the catalogue of drug-related conduct in these two provisions with the more general phrase "relating to a controlled substance." Id. While both actions seem to have been intended to clarify the expansive reach of the statute, they offer no insight into Congress's intent with respect to the use of drug solicitation crimes as grounds for inadmissibility or deportability.

31

(e)     The 1990 Amendments

In 1990 amendments to the INA, Congress renumbered what had been 8 U.S.C. § 1182(a)(23) so that inadmissibility would henceforth be treated under 8 U.S.C. § 1182(a)(2)(A)(i).  At the same time, Congress placed the 1956 conspiracy amendment in a parenthetical and extended inadmissibility beyond aliens formally convicted of drug-related crimes to those who admitted such crimes.  Thus, it rendered inadmissible

> any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance [as defined by federal law].

Immigration Act of 1990, Pub. L. No. 101-649, § 601(a), 104 Stat. 4978, 5067.

The 1990 amendments to the statute's deportability provision were not identical. Notably, the grounds for deportability, unlike those for inadmissibility, were not extended beyond convictions to admissions.  Nevertheless, the conspiracy clause in the deportability provision, like that in the inadmissibility provision, was placed in a parenthetical.  This deportability provision — but not the inadmissibility provision — was amended to add "attempt" to the parenthetical.  Thus, the 1990 amendments rendered deportable

> [a]ny alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . .

32

Id. §§ 508, 602, 104 Stat. at 5051, 5080.[18]

Nothing in the conference report for these amendments indicates why the conspiracy clause was moved to a parenthetical or why attempt was included in the deportability provision but not in the inadmissibility provision. See H.R. Rep. No. 101-955 (1990) (Conf. Rep.), as reprinted in 1990 U.S.C.C.A.N. 6784. That report states simply that the conference version of the legislation

> provides for a comprehensive revision of all the existing grounds for exclusion and deportation, including the repeal of outmoded grounds, the expansion of waivers for certain grounds, the substantial revision of security and foreign policy grounds, and the consolidation of related grounds in order to make the law more rational and easy to understand.

Id. at 6793. The references in this passage to "existing grounds" and "consolidation of related grounds" might be read to suggest no congressional intent to expand or contract the grounds for inadmissibility and deportability except with respect to security and foreign policy. But these references fail to reveal Congress's intent with respect to inchoate crimes generally or solicitation crimes specifically.

Against this backdrop we consider the fragment of history relied on in Matter of Hou, 20 I. & N. Dec. at 517-18. As Hou observed, the inclusion of attempt in the INA's deportability provision had also been provided for in another bill pending in 1990, the

---

[18]The 1990 amendments provided for this change in two distinct sections, one providing for the amendment of 8 U.S.C. § 1251(a)(11), and the other creating 8 U.S.C. § 1227(a)(2)(B)(i), which then replaced § 1251(a)(11). This anomaly is noted in Matter of Hou, 20 I. & N. Dec. at 517.

33

Comprehensive Crime Control Act of 1990, H.R. 5269.[19]  The House Judiciary Committee

Report on that legislation observed:

> Current law [8 U.S.C. § 1251(a)(11) (1988)] renders deportable aliens who have been convicted of violating, or conspiring to violate, any Federal or state law regarding controlled substances.  It does not make attempts to violate such law a deportable offense.  By contrast, a conspiracy or attempt to traffic in controlled substances makes an alien an aggravated felon.  Section 1507 corrects this oversight by making a conviction for attempting to violate controlled substances laws a deportable offense.

H.R. Rep. No. 101-681(I) (1990), as reprinted in 1990 U.S.C.C.A.N. 6472, 6555-56.  Hou

concluded from this language that Congress clearly intended to make a "substantive" change

in the law "without" which "attempt crimes did not otherwise give rise to deportability under

that provision."  Matter of Hou, 20 I. & N. Dec. at 518.  We are less confident of Congress's

intent.

The report might only have been making the obvious point that the INA's

deportability provision did not specifically make attempt to violate a narcotics law a

deportable offense.  As the report notes, both narcotics conspiracies and attempts were

already recognized as aggravated felonies under the INA.  See 8 U.S.C. § 1101(a)(43)

(1988).  Because an aggravated felony conviction rendered an alien deportable, see id. §

1251(a)(4)(B) (1988), the proposed amendment usefully eliminated a potentially confusing

statutory discrepancy.  This appears to be the "oversight" for which the Committee urged

---

[19]The provision was removed from the Crime Control Act prior to its enactment and was passed into law as part of the Immigration Act of 1990.  See Matter of Hou, 20 I. & N. Dec. at 517-18 & n.6.

correction. H.R. Rep. No. 101-681(I). If the Committee had intended further to take exception to longstanding agency and judicial interpretations of the statute's "relating to" language as broad enough to reach even unspecified inchoate crimes with drug objectives, one might expect it to have said so.

(f)     The 1994 Amendments

In 1994, two years after the BIA decisions in Matter of Beltran and Matter of Hou, Congress amended the INA to create the inadmissibility provision here at issue by inserting "or attempt" after "conspiracy." Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 203(a), 108 Stat. 4305, 4311. The amendment was entitled a "[c]larification," id. at 4311, and, in a section-by-section analysis of a Senate bill containing the amentment, its purpose was described as "to make clear that an 'attempt' or 'conspiracy' to commit certain criminal offenses serve as a basis for exclusion of aliens," 139 Cong. Rec. S8553-03, 1993 WL 239719 (providing section-by-section analysis of Senate bill on day that bill passed Senate) (emphasis added). These references might be construed to indicate that Congress's intent was only to clarify what it thought was already expressed in the statute's broad reference to "a violation of . . . any law . . . relating to a controlled substance," and not to make a substantive change in the statute. But, here again, that construction is not so compelling that we can confidently resolve textual ambiguity about drug solicitation crimes

35

at <u>Chevron</u> step one.[20]

In sum, whether we review the seven decades of relevant legislative history as a whole or attempt to parse individual passages, we cannot conclude that "Congress's interpretive clues" speak directly or clearly to the point in dispute. <u>General Dynamic Land Sys., Inc. v. Cline</u>, 540 U.S. at 586; <u>see also</u> <u>Japan Whaling Ass'n v. Am. Cetacean Soc'y</u>, 478 U.S. 221, 240 (1986) (observing that, while "scattered statements" in legislative history lent some support to litigant's argument, totality did not clearly indicate Congress's intent). Accordingly, even with the benefit of legislative history, we cannot resolve the identified statutory ambiguity in this case at <u>Chevron</u> step one.

      c.     <u>The BIA Reasonably Concluded that Aliens Who Commit Solicitation Crimes with Drug Objectives Are Inadmissible Under § 1182(a)(2)(A)(i)(II)</u>

In this case, the BIA resolved the ambiguity created by the disjunctive parenthetical in 8 U.S.C. § 1182(a)(2)(A)(i)(II) by relying on its prior decision in <u>Matter of Beltran</u>, 20 I. & N. Dec. 521. <u>Beltran</u> held that, even though solicitation was not among the inchoate crimes specifically referenced in the parallel deportability provision of the INA, it constituted "a violation of . . . any law . . . relating to a controlled substance" when its intended object was a drug crime. <u>See</u> <u>id.</u> at 526-27. We conclude that <u>Beltran</u>'s analysis is reasonable and

---

[20]We note that in the 1991 amendments to the INA deportability provision dealing with miscellaneous crimes, the insertion of "attempt" was entitled a "correction," Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 307, 105 Stat. 1733, 1753, language suggesting more than a clarification.

warrants <u>Chevron</u> deference as we review Mizrahi's challenge to the agency's reliance on

<u>Beltran</u> in holding him inadmissible under § 1182(a)(2)(A)(i)(II).[21]

In reaching this conclusion we note first that in <u>Beltran</u>, the BIA recognized, as we

have ourselves, that the broad language at issue, apart from the parenthetical, has long been

construed "to give inclusive meaning . . . to the phrase 'relating to,'" thereby supporting the

conclusion that Congress meant this language "to encompass . . . inchoate or preparatory

crimes . . . when the underlying substantive crime involves a drug offense." 20 I. & N. Dec.

at 526 (collecting cases). Second, <u>Beltran</u> correctly recognized that solicitation, like other

inchoate offenses, "presupposes a purpose to commit another crime." <u>Id.</u> at 526-27. As we

---

[21]We have considered whether the BIA's reliance on <u>Beltran</u> to decide this case without discussion of the apparently conflicting reasoning in <u>Hou</u> precludes deference under <u>Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.</u>, 463 U.S. 29, 42 (1983) ("[A]n agency changing its course . . . is obligated to supply a reasoned analysis for the change beyond that which may be required . . . in the first instance."). We conclude that <u>State Farm</u> is not applicable because the BIA decision in Mizrahi's case does not represent a change in agency course. To the contrary, the ruling follows an agency course dating from 1954 in <u>Matter of G</u>, 6 I. & N. Dec. 353, and continuing through <u>Matter of N</u>, 6 I. & N. Dec. 557, <u>Matter of Bronsztejn</u>, 15 I. & N. Dec. 281, and <u>Matter of Beltran</u>, 20 I. & N. Dec. 521, which has consistently construed the statutory phrase "a violation of . . . any law . . . relating to" narcotics to encompass unspecified inchoate crimes with narcotics objectives. To the extent <u>Hou</u> urged a narrower construction in <u>dicta</u>, Mizrahi has never argued — to the BIA or to this court — that <u>Hou</u>'s interpretation of the INA's drug deportability provision should have been followed in this case. <u>Hou</u>'s failure to receive any mention by the Fifth Circuit in <u>Peters v. Ashcroft</u>, 383 F.3d 302, or the Ninth Circuit in <u>Coronado-Durazo v. INS</u>, 123 F.3d 1322, only reinforces our conclusion that its narrow interpretation of the INA's drug deportability provision never became settled agency policy requiring explanation for a departure. <u>See generally</u> <u>Shaw's Supermarkets, Inc. v. NLRB</u>, 884 F.2d 34, 41 (1st Cir. 1989) (Breyer, J.) (observing that agency is not required "microscopically" to examine prior cases for possible conflicts in precedent).

have observed, that "purpose" is the requisite <u>mens rea</u> element of a solicitation crime. Precisely because this element is identified by the object statute, the solicitation of a drug offense categorically qualifies as a violation of a law relating to a controlled substance. <u>See</u> <u>supra</u> at **[10-16]**. Thus, it was entirely reasonable for the BIA to conclude that when the "underlying [object] offense involves a drug violation, . . . it is consistent with congressional intent to likewise consider a conviction for solicitation to commit that crime to be a violation of a law 'relating to a controlled substance.'" <u>Matter of Beltran</u>, 20 I. & N. Dec. at 527. Finally, <u>Beltran</u> reasonably concluded that Congress's explicit reference to certain inchoate offenses as grounds for deportation did not indicate its intent to exclude others not so referenced. <u>See</u> <u>id.</u> at 526 n.12. Acknowledging the construction maxim "<u>expressio unius est exclusio alterius</u>,"[22] <u>Beltran</u> observed that the maxim's reliability might nevertheless be questioned to the extent "'it stands on the faulty premise that all possible alternative or supplemental provisions were necessarily considered and rejected by the legislative draftsmen.'" <u>Id.</u> (quoting <u>National Petroleum Refiners Ass'n v. FTC</u>, 482 F.2d 672, 676 (D.C. Cir. 1973)). Without discounting the maxim's usefulness as a tool of construction in many cases, we note that the BIA's skepticism reasonably extends to this case where our own review of the legislative history fails to indicate any congressional consideration, much less rejection, of drug solicitation crimes as grounds for deportability or inadmissibility.

---

[22]"[T]he expression of one thing is the exclusion of another." <u>Qi Han Guo v. United States Dep't of Justice</u>, 422 F.3d 61, 64 (2d Cir. 2005) (quoting <u>Black's Law Dictionary</u> 1635 (7th ed. 1999)).

We conclude that the BIA in <u>Beltran</u> reasonably determined that a solicitation conviction with a drug objective constituted a violation of a "law . . . relating to a controlled substance." Accordingly, we defer to that construction. Because the same language is at issue in Mizrahi's case, we identify no error in the BIA's reliance on <u>Beltran</u> to conclude that Mizrahi's conviction for solicitation of a drug sale rendered him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

### 3.    Mizrahi's Other Arguments Are Unsupported by Law

We have considered the other arguments advanced by Mizrahi and conclude that they are without merit. To the extent Mizrahi urges us to apply the rule of lenity to construe § 1182(a)(2)(A)(i)(II) in his favor, his argument is foreclosed by our decision in <u>Ruiz-Almanzar v. Ridge</u>, 485 F.3d 193 (2d Cir. 2007). The rule of lenity is a doctrine of last resort, and it cannot overcome a reasonable BIA interpretation entitled to <u>Chevron</u> deference. <u>See</u> <u>id.</u> at 198.

Insofar as Mizrahi faults the IJ for suggesting that he was "in possession" of drugs, a conclusion going beyond the facts admitted in his plea, we note simply that the alleged error was not repeated by the BIA, which based its decision only on Mizrahi's crime of conviction. <u>See</u> <u>Yan Chen v. Gonzales</u>, 417 F.3d 268, 271 (2d Cir. 2005) ("When the BIA issues an opinion, [that] opinion becomes the basis for judicial review." (internal quotation marks omitted)). That crime, solicitation of a drug sale, is supported by Mizrahi's plea and relates to a controlled substance for the reasons discussed in this opinion.

Finally, without citation to relevant authority, Mizrahi invites this court to look beyond his crime of conviction and to consider the equities of his individual circumstances in ruling on his petition. Our limited authority to review questions of law does not extend to such an equitable inquiry. See 8 U.S.C. § 1252(a)(2)(C)-(D).

## III. Conclusion

To summarize, we conclude:

1.  Mizrahi's New York conviction for solicitation constitutes a violation of law defined by two statutes: N.Y. Penal Law § 100.05(1), which generically proscribes solicitation; and N.Y. Penal Law § 220.31, which proscribes Mizrahi's specifically intended object, the sale of drugs. As such, his conviction represents a violation of a law "relating to a controlled substance."

2.  By disjunctively referencing two inchoate crimes, conspiracy and attempt, in the INA's drug inadmissibility provision, see 8 U.S.C. § 1182(a)(2)(A)(i)(II), Congress did not speak directly to the question of whether solicitation crimes also constitute grounds for inadmissibility.

3.  In Matter of Beltran, 20 I. & N. Dec. 521, the BIA reasonably resolved this ambiguity by concluding that solicitation crimes with drug objectives rendered aliens deportable under the broad statutory reference to "a violation of . . . any law . . . relating to a controlled substance."

4.  Because Beltran's reasonable construction merits Chevron deference as

applied to identical language in the INA's drug inadmissibility provision, we identify no legal error in the BIA's conclusion that Mizrahi's conviction for soliciting a drug sale rendered him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

The petition for review of the BIA order of removal is DENIED. The pending motion for a stay of removal is DISMISSED as moot.