13-4049-cv
Newdow v. United States

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Submitted: April 21, 2014          Decided: May 28, 2014)

Docket No. 13-4049-cv

_____

ROSALYN NEWDOW; KENNETH BRONSTEIN; BENJAMIN DREIDEL; NEIL GRAHAM; JULIE
WOODWARD; JAN DOE; PAT DOE; DOE CHILD 1 AND DOE CHILD 2; ALEX ROE; DREW ROE; ROE
CHILD 1; ROE CHILD 2; ROE CHILD 3; VAL COE; JADE COE; COE CHILD 1; COE CHILD 2; NEW
YORK CITY ATHEISTS; AND FREEDOM FROM RELIGION FOUNDATION,[*]

*Plaintiffs–Appellants*,

-*v*.-

RICHARD A. PETERSON, ACTING DIRECTOR, UNITED STATES MINT; LARRY R. FELIX, DIRECTOR,
BUREAU OF ENGRAVING AND PRINTING; THE UNITED STATES OF AMERICA; JACOB J. LEW,
SECRETARY OF THE TREASURY,

*Defendants–Appellees*.

_____

Before:          PARKER AND HALL, *Circuit Judges*; AND MATSUMOTO, *District Judge*.[†]

_____

Appeal from the September 10, 2013 judgment of the United States District Court for the
Southern District of New York (Baer, *J.*), dismissing, on a motion pursuant to Federal Rule of
Civil Procedure 12(b)(6), a suit brought under the Establishment Clause and Free Exercise
Clause of the First Amendment, as well as the Religious Freedom Restoration Act of 1993
("RFRA"), challenging 31 U.S.C. §§ 5112(d)(1) and 5114(b), which require the inclusion of the
national motto, "In God We Trust," on this country's paper currency and coinage.

---

[*] This caption differs from the official caption, which is incorrect in certain respects. The Clerk of the Court is
directed to change the caption accordingly.
[†] The Honorable Kiyo A. Matsumoto, District Judge for the Eastern District of New York, sitting by designation.

We conclude that the statutes at issue do not violate the Establishment Clause or the Free Exercise Clause and RFRA because they do not have a religious purpose or advance religion, nor do they place a substantial burden on appellants' religious practices. Accordingly, we AFFIRM the judgment of the District Court.

—————————————

Michael Newdow, Sacramento, California, *for Plaintiffs–Appellants*.

Preet Bharara, United States Attorney for the Southern District of New York (Michael J. Byars, Benjamin Torrance, Assistant United States Attorneys, *on the brief*), New York, New York, *for Defendants–Appellees*.

—————————————

PER CURIAM:

Plaintiff-appellants appeal from an order of the United States District Court for the Southern District of New York (Harold Baer, District Judge), which granted dismissal of their claims under the Establishment Clause and the Free Exercise Clause of the United States Constitution, as well as the Religious Freedom Restoration Act of 1993 ("RFRA"). Appellants are eleven individuals who self-identify as atheists and secular humanists and who include numismatics, a teacher, parents and their minor children, and others who state that they have been harmed by the placement of "In God We Trust" on currency, as well as two organizations, the New York City Atheists and the Freedom from Religion Foundation. They challenge two statutory provisions, 31 U.S.C. §§ 5112(d)(1) and 5114(b), which require that the country's motto, "In God We Trust," be placed on all coinage and paper currency. On May 8, 2013, defendants, including the United States, Richard A. Peterson, Deputy Director of the United States Mint, Larry R. Felix, Director of the Bureau of Engraving and Printing, and Jacob J. Lew, Secretary of the Treasury,[1] moved to dismiss the case in its entirety. Judge Baer granted the motion and appellants timely filed the instant appeal.

---

[1] Appellants also brought suit against the United States Congress, but voluntarily dismissed the legislative body, and against Timothy J. Geithner, prior to his departure from his role as Secretary of the Treasury.

We have never addressed the question of whether the inclusion of the words "In God We Trust" on United States currency violates the Constitution or RFRA and write today to clarify the law on this issue. Four other circuit courts have ruled on this question, however, and have found that the statutes at issue do not contravene the Constitution. *See Kidd v. Obama*, 387 F. App'x. 2 (D.C. Cir. 2010) (per curiam) (affirming the district court and holding that the printing of the motto on currency does not violate the First Amendment); *Gaylor v. United States*, 74 F.3d 214, 216 (10th Cir. 1996) (holding that the "statutes establishing the national motto and directing its reproduction on U.S. currency clearly have a secular purpose" and that "the motto's primary effect is not to advance religion; instead, it is a form of 'ceremonial deism,'" and, therefore, the statutes do not violate the Establishment Clause); *O'Hair v. Murray*, 588 F.2d 1144 (5th Cir. 1979) (per curiam) (upholding the constitutionality of the statutes requiring the motto to be placed on currency and the statute criminalizing the defacement of the motto), *aff'g* district court's opinion in *O'Hair v. Blumenthal*, 460 F. Supp. 19 (W.D. Tex. 1978); *Aronow v. United States*, 432 F.2d 242 (9th Cir. 1970) (affirming the dismissal of a challenge to both the motto and its inscription on currency because "[i]t is quite obvious that the national motto and the slogan on coinage and currency 'In God We Trust' has nothing whatsoever to do with the establishment of religion.  Its use is of a patriotic or ceremonial character"); *see also Newdow v. Lefevre*, 598 F.3d 638 (9th Cir. 2010) (declining to overrule *Aronow*). We agree with our sister circuits and hold that 31 U.S.C. §§ 5112(d)(1) and 5114(b) do not violate the Establishment Clause, the Free Exercise Clause or RFRA. Accordingly, the judgment of the district court is affirmed.

**DISCUSSION**

We review the district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*. *See, e.g.*, *Chase Grp. Alliance LLC v. City of New York Dept. of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).

### A. The Establishment Clause

The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion." In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court held that, in order to comply with the Establishment Clause: "First, the statute [at issue] must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances or inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Id.* at 612-13 (internal citations and quotation marks omitted). Although the Supreme Court has, in some cases, criticized or declined to apply *Lemon*, *see, e.g.*, *Van Orden v. Perry*, 545 U.S. 677, 685 (2005), we have previously held that *Lemon* remains the prevailing test in this Circuit, absent its abrogation. *See Bronx Household of Faith v. Bd. of Educ. of City of New York*, 650 F.3d 30, 40 n.9 (2d Cir. 2011).[2] Both the appellants and the appellees agree that only the first and second prongs of the *Lemon* test are at issue in this case.

---

[2] Appellants maintain a "neutrality principle" should underlie our Establishment Clause analysis. While appellants are correct that a number of the Supreme Court's Establishment Clause cases discuss the importance of the government acting neutrally as to religion, the Court has also made it clear that "an appeal to neutrality alone cannot possibly lay every issue to rest, or tell us what issues on the margins are substantial enough for constitutional significance, a point that has been clear from the founding era to modern times." *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 876 (2005); *see also Van Orden*, 545 U.S. at 699 (Breyer, J., concurring) ("tests designed to measure 'neutrality' alone are insufficient, both because it is sometimes difficult to determine when a legal rule is 'neutral,' and because 'untutored devotion to the concept of neutrality can lead to . . . results which partake . . . of . . . a passive, or even active, hostility to the religious.'" (quoting *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 306 (1963) (Goldberg, J., concurring))).

4

As the Supreme Court has repeatedly indicated in *dicta*,[3] the statutes at issue in this case have a secular purpose and neither advance nor inhibit religion. The Court has recognized in a number of its cases that the motto, and its inclusion in the design of U.S. currency, is a "reference to our religious heritage." *Lynch v. Donnelly*, 465 U.S. 668, 676 (1984); *see also Cnty. of Allegheny v. Am. Civil Liberties Union Greater Pitts. Chapter*, 492 U.S. 573, 625 (1989) (O'Connor, J., concurring) ("in my view, [governmental] acknowledgements [of religion], such legislative prayers . . . and the printing of 'In God We Trust' on our coins serve the secular purposes of solemnizing public occasions, expressing confidence in the future and encouraging the recognition of what is worthy of appreciation in society." (internal citation and quotation marks omitted)). As such, the Court's Justices have distinguished our currency from improper governmental endorsements of religion. *See, e.g.*, *Van Orden*, 545 U.S. at 716 (Stevens, J., dissenting) (noting that the "message conveyed by the Ten Commandments cannot be analogized to an appendage to a common article of commerce ('In God We Trust')."); *Cnty. of Allegheny*, 492 U.S. at 602-03 (holding, *inter alia*, that the display of a crèche at a country courthouse violated the Establishment Clause but noting that "there is an obvious distinction between a crèche display and references to God in the motto and the pledge."); *Lynch*, 465 U.S. at 716 (Brennan, J., dissenting) (dissenting from the Court's approval of a crèche display in a park but distinguishing the motto as "a form [of] 'ceremonial deism,' protected from Establishment Clause scrutiny chiefly because [it has] lost through rote repetition any significant religious

---

[3] Although appellants question the persuasiveness of the Court's *dicta*, we have an "obligation to accord great deference to Supreme Court *dicta*," absent a change in the legal landscape. *United States v. Colasuonno*, 697 F.3d 164, 179 (2d Cir. 2012).

content."). We therefore hold, in line with the Supreme Court's *dicta*, that 31 U.S.C. §§ 5112(d)(1) and 5114(b) do not violate the Establishment Clause.[4]

## B. The Free Exercise Clause and RFRA

In addition to their Establishment Clause argument, appellants also contend that 31 U.S.C. §§ 5112(d)(1) and 5114(b) violate the Free Exercise Clause and RFRA. Pursuant to the Free Exercise Clause, the government may not "prohibit[ ] the free exercise" of religion. U.S. Const. amend. I. In 1990, the Supreme Court clarified its Free Exercise Clause jurisprudence by holding that the government need not have a compelling interest in order to enact generally applicable laws that happen to burden religious practice. *Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 882-90 (1990). In response, Congress enacted RFRA, which provides in relevant part that the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person" "is in furtherance of a compelling governmental interest" and "is the least restrictive means necessary of furthering that compelling government interest." 42 U.S.C. § 2000bb-1(b); *see also Sossamon v. Texas*, 131 S.Ct. 1651, 1656 (2011) (noting that by enacting RFRA, Congress "intended to 'restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) . . . in all cases where free exercise of religion is substantially burdened.'" (quoting 42 U.S.C. § 2000bb(b)(1))). As we have noted previously, the "Free Exercise Clause does not normally 'inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct.' . . . RFRA, in contrast, requires strict scrutiny of such laws where the incidental burden on religion is substantial." *Hankins v. Lyght*,

---

[4] We note that our holding is consistent with the Supreme Court's most recent jurisprudence addressing the Establishment Clause. *See Town of Greece v. Galloway*, ___ U.S. ___, No. 12-696, 2014 WL 1757828 (May 5, 2014) (holding that the town's practice of "offering a brief, solemn, and respectful prayer to open its monthly meetings" did not violate the Establishment Clause.)

6

441 F.3d 96, 111-12 (2d Cir. 2006) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)); *see also Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006) ("Absent . . . an objective" "to impugn [plaintiffs'] religious beliefs or to restrict their religious practices," "a Free Exercise claim will be sustained only if the government has placed a substantial burden on the observation of a central religious belief, without a compelling governmental interest justif[ying] the burden." (internal quotation marks and citation omitted)).

Appellants argue that they are substantially burdened by the necessity of using currency because doing so requires them "to bear on their persons . . . a statement that attributes to them personally a perceived falsehood that is the antithesis of the central tenant of their religious system." (App. Br. 25.) Appellants also contend that using money forces them to proselytize. (App. Br. 26.) We respectfully disagree that appellants have identified a substantial burden upon their religious practices or beliefs.

"[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)); *see also Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007) ("Supreme Court precedents teach that a substantial burden on religious exercise exists when an individual is required to 'choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'" (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963))). Appellants face no such stark choice between a basic benefit and a core belief. As the Supreme Court has previously indicated, the carrying of currency, which is fungible and not publicly displayed, does not implicate concerns that its bearer will be forced to proclaim a viewpoint contrary to his own. In *Wooley v.*

7

*Maynard*, 430 U.S. 705 (1977), the Court held that New Hampshire's compulsory "Live Free or Die" license plates violated the First Amendment rights of plaintiffs, who were Jehovah's Witnesses, but noted that it did not view the ruling as one that would apply to the country's currency: "currency, which is passed from hand to hand, differs in significant respects from an automobile, which is readily associated with its operator. Currency is generally carried in a purse or pocket and need not be displayed to the public. The bearer of currency is thus not required to publicly advertise the national motto." *Id.* at 717 n.15. For substantially the same reasons, we find that appellants' system of beliefs is not substantially burdened by the placement of the motto on currency and, therefore, affirm the district court's judgment on appellants' Free Exercise and RFRA claims.

## CONCLUSION

We have considered appellants' other arguments and find them to be without merit. For the foregoing reasons, we affirm the district court's judgment dismissing the case.

8