15-1774-cr
United States v. Harris

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2016

(Argued: August 29, 2016    Decided: September 22, 2016)

Docket No. 15-1774-cr

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

TROY HARRIS, AKA GUNNY,

*Defendant-Appellant,*

TRACY HARRIS, AKA SHORTY, AKA TRAY, YVONNE DANIELS, AKA ZIP, SAMUEL HENLEY, AKA POP, AKA SAM, WILLIAM COLE, AKA WILL, MICHAEL CHANEY, AKA MIKE, AKA MICK, JAMES BROADWAY, AKA PORK, CLAUDE DAVIS, AKA CAHUNA, BOBBY WAINWRIGHT, SHARIEFF GRANT, LOUIS NIEVES, AKA LOUIS RAMOS, KAREN MARTINEZ, AKA JAZZ TORRES, TONY MCAFEE, AKA TR, AKA LT, AND LORRAINE GARCIA, AKA CHULA,

*Defendants.*

1

Before:

NEWMAN, CALABRESI, RAGGI, *Circuit Judges.*

On appeal from a judgment of the United States District Court for the Southern District of New York (Preska, *C.J.*) revoking supervised release, defendant challenges (1) the district court's statutory authority under 18 U.S.C. § 3583(e) to revoke supervision based on conduct that had already prompted a modification in the conditions of his supervision; and (2) its decision, pursuant to Fed. R. Crim. P. 32.1(b)(2)(C), to consider victim hearsay statements in adjudicating a violation charge of new criminal conduct.

AFFIRMED.

MATTHEW W. BRISSENDEN, Matthew W. Brissenden, P.C., Garden City, New York, *for Defendant-Appellant*.

JENNIFER L. GACHIRI, Assistant United States Attorney (Thomas McKay, Karl N. Metzner, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

REENA RAGGI, *Circuit Judge*:

Following a guilty plea, defendant Troy Harris was convicted in 2001 in the United States District Court for the Southern District of New York (Robert P. Patterson, *Judge*) of conspiracy to traffic in narcotics, see 21 U.S.C. §§ 841(b)(1)(A), 846, for which crime he was sentenced to 188 months' imprisonment and five years' supervised release. See United States v. Harris, No. 00-CR-00105 (RPP) (S.D.N.Y. Feb. 14, 2001), ECF No. 191.[1] Harris now appeals from a judgment of the same court (Loretta A. Preska, *Chief Judge*) entered on May 14, 2015, revoking his supervised release and imposing an additional prison term of 27 months based on a finding that he had engaged in new criminal conduct while on federal supervision, specifically, assault, as proscribed by New York Penal Law § 120.00(1), and narcotics distribution, in violation of New York Penal Law § 220.39. Harris challenges both grounds for revocation.

As to narcotics trafficking, Harris does not dispute the alleged conduct. Instead, for the first time on appeal, he challenges the district court's statutory authority to revoke supervision based on conduct that had already prompted it

---

[1] The district court subsequently reduced Harris's prison term to 151 months pursuant to Amendment 706 to the Sentencing Guidelines, which provided for retroactive reduction of certain crack cocaine sentences.

3

to modify the terms of his supervision. Harris argues that 18 U.S.C. § 3583(e) confers modification and revocation authority in the disjunctive, so that once a court exercises one (here, modification) in response to particular conduct, it cannot exercise the other (revocation) with respect to that same conduct.

As to assault, Harris argues that the district court impermissibly considered victim hearsay in making its preponderance finding that he engaged in such new criminal conduct while on federal supervision.

Because we conclude that both arguments fail on the merits, we affirm the challenged revocation judgment.

## I.    **Background**

Harris began serving the five-year supervision component of his 2001 federal sentence on March 18, 2011. That supervision was subject to certain conditions, three of which are relevant here: that Harris (1) not commit another federal, state, or local crime; (2) truthfully answer all probation inquiries; and (3) notify his probation officer ten days prior to any change in residence.

### A.    Initial Noncompliance Report: Assault

On August 26, 2014, three years into Harris's supervision term, the United States Probation Department for the Southern District of New York ("Probation") filed a report notifying Judge Patterson that Harris had been arrested by the New

4

York City Police Department ("NYPD") based on a recent complaint filed by a woman who stated that Harris had "struck her in the face with a closed fist after she confronted him for smacking her on her buttocks during an event they were attending." App'x 26.[2] Probation reported that the offense—third-degree assault, see N.Y. Penal Law § 120.00(1)—represented a Class A misdemeanor and a Grade C violation of supervised release. Nevertheless, because the state case had been dismissed when the complainant declined to press criminal charges, Probation recommended that no action be taken with respect to Harris's federal supervision. The district court accepted the recommendation the following day, August 27, 2014.

B. Second Noncompliance Report: Narcotics Trafficking

Less than three weeks later, on September 11, 2014, Probation filed a second noncompliance report notifying Judge Patterson of Harris's September 2, 2014 NYPD arrest, this time for third-degree criminal sale of a controlled substance, see N.Y. Penal Law § 220.39, based on police observations of Harris exchanging crack cocaine for money. Probation recommended, and Harris

---

[2] Probation later clarified that the assault took place on July 25, 2014, and that the complaint was filed that same day.

agreed to, a modification of supervision to add a search condition, which the district court ordered on September 15, 2014.

C.  Violation Warrant and Revocation Petition

Two months later, on November 14, 2014, Probation determined that Harris was in violation of the supervision condition requiring that he provide advance notice of any change in residence.  On that day, Probation conducted an unannounced visit to Harris's reported residence, the apartment of his maternal aunt.  Not only was Harris not present, but a search also revealed that he had "little to no belongings in the apartment."  App'x 57.  When Probation reached Harris by phone, he stated that he was at his uncle's apartment.  After some initial hesitation, he provided the building's address but refused to identify the apartment number.

Judge Patterson was advised of these facts the same day, and promptly issued an arrest warrant based on four alleged violations of supervised release: (1) failure truthfully to answer Probation inquiries, (2) failure to notify Probation of a change in residence, (3) selling narcotics in violation of state law, and (4) committing third-degree assault in violation of state law.  The United States Marshal executed the warrant and produced Harris in court later that day.  On consent, Harris was released pending a hearing on the violation charges, subject

6

to additional supervision conditions of home detention and electronic monitoring.

On November 17, 2014, Probation formally petitioned for revocation of Harris's supervised release based on the four alleged violations. The petition advised that, insofar as one of the violations involved possession of narcotics, revocation was mandatory under 18 U.S.C. § 3583(g). Further, because (1) Harris had pleaded guilty to a Class A felony, (2) the alleged narcotics offense constituted a Grade A supervision violation, and (3) Harris had a Criminal History Category of II, his recommended Guidelines sentencing range for that violation was 27 to 33 months' imprisonment, see U.S.S.G. § 7B1.4—approximately half the statutory 5-year maximum, see 18 U.S.C. § 3583(e)(3). Probation explained that the other three allegations pertained to Grade C violations of supervision, which—given Harris's Criminal History Category of II—corresponded to a recommended Guidelines sentencing range of 4 to 10 months' imprisonment. See U.S.S.G. § 7B1.4. Probation recommended that Harris be sentenced to 4 months' imprisonment, the low end of this lesser range, to be followed by an additional one-year term of supervised release.

D.    Revocation Hearing

In February 2015, Harris's case was reassigned to Chief Judge Preska, who conducted a revocation hearing on the narcotics- and assault-based charges on April 2, 2015.[3]

1.    Government's Motion To Admit Victim Hearsay Statements

At the outset, the government moved to allow out-of-court statements by the victim of the alleged assault to be admitted through three law enforcement witnesses: (1) NYPD Officer Efrain Ayala, who first responded to the victim's 911 call on the night of the assault; (2) NYPD Detective Jose Chevere, who interviewed the victim two weeks later; and (3) United States Attorney's Office Criminal Investigator Antoinette Guzman, who interviewed the victim six months after the incident.  The government stated that the victim herself refused to testify—notwithstanding receipt of a subpoena and an offer of appointed counsel and immunity—based on her professed fear of retaliation by Harris or his associates, all of whom continued to live in the victim's neighborhood.  It argued that this fear, coupled with the reliability of the victim's statements,

---

[3] The government had requested that, "in the interests of judicial economy," the court rule on violations (3) and (4) before the government presented evidence on violations (1) and (2).  App'x 64.

8

constituted good cause to conclude that the interest of justice did not require the victim's appearance at the hearing.  See Fed. R. Crim. P. 32.1(b)(2)(C).

The district court agreed.  It credited the proffered fear based on the victim's consistent expression of it, and concluded that Harris's confrontation interest was entitled to little weight by comparison.  Further, it found the hearsay statements reliable because they bore overall consistency, the first one was made near the time of the assault following a 911 call, and the account was corroborated by the responding officer's observations of physical injuries consistent with the reported assault.

### 2. Violation Findings

#### a. Narcotics Trafficking While on Supervision

In support of the narcotics trafficking violation, two police officers testified to witnessing Harris exchange drugs for money, and to recovering the exchanged drug packet, the contents of which tested positive for cocaine.  The district court deemed this testimony credible and sufficient, by itself, to establish the charged violation.  It also found the conclusion corroborated by further credited police and physician testimony establishing that, after arrest, Harris attempted to conceal another packet of cocaine still in his possession by ingesting it.

9

### b.    Assault While on Supervision

In support of the assault-based violation, law enforcement officials testified that on three occasions—the day of the assault, two weeks later, and six months thereafter—the victim recounted how, in the early morning hours of July 25, 2014, while she was dancing with a group of people, Harris smacked her hard on the buttocks.  See App'x 209–10.  When she verbally confronted Harris about that conduct, "he punched her in the mouth with a closed fist."  Id. at 210.  The district court credited the victim's hearsay accounts not only because of (1) their overall consistency, but also because (2) the victim, having called 911, had an incentive to be truthful; (3) responding Officer Ayala had personally observed the victim's "swollen and bruised lip with [a] laceration on the inside"; and (4) all three officers who spoke with the victim reported finding her credible.  Id. at 211.  Based on this evidence, the district court concluded that Harris's commission of the assault while on supervision was proved by more than a "preponderance"; rather, the proof was "overwhelming."  Id. at 209.

In light of the district court's findings that Harris had committed the crimes of narcotics trafficking and assault while on supervision, the government moved to dismiss the remaining two violation charges, which motion the court granted at the conclusion of the hearing.

E.    Revocation Judgment

On May 12, 2015, the district court revoked Harris's supervised release and sentenced him to a total of 27 months' imprisonment to be followed by an additional one year of supervised release. Harris, who is currently serving that prison sentence, timely filed this appeal.

## II.    Discussion

A.    Challenge to Court's Statutory Authority

1.    Standard of Review

Harris submits that, because the actions a court may take under 18 U.S.C. § 3583(e) are stated in the disjunctive "or," the district court was not statutorily authorized to <u>revoke</u> his supervision based on the same conduct—narcotics trafficking—that had earlier prompted it to <u>modify</u> the conditions of his supervision by adding a search condition.[4]    While ordinarily we review

---

[4] Section 3583(e) states as follows:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure

questions of statutory interpretation <u>de novo</u>, <u>see</u> <u>United States v. Cassesse</u>, 685

relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;

(2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;

(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . ; or

(4) order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an order under this paragraph may be imposed only as an alternative to incarceration.

18 U.S.C. § 3583(e).

F.3d 186, 188 (2d Cir. 2012), our review here is for plain error because Harris failed to assert the challenge in the district court, see Fed. R. Crim. P. 52(b); United States v. Marcus, 560 U.S. 258, 262 (2010) (holding that plain error will be identified only if (1) there is error; (2) that is clear or obvious, rather than subject to reasonable dispute; (3) that affects defendant's substantial rights; and (4) that seriously impugns fairness, integrity, or public reputation of judicial proceedings); accord United States v. Rodriguez, 775 F.3d 533, 536 (2d Cir. 2014).

In urging otherwise, Harris maintains that the error was preserved when, at the conclusion of sentencing, he told the district court, "I would like to state, for the record, this is double jeopardy. I'm being punished twice for the same crime." App'x 230. The argument fails because Harris now expressly disavows any double jeopardy claim, mounting a purely statutory challenge not raised below. See Appellant's Br. 26. Further, he concedes that, if the statutory challenge was not preserved, plain error review applies. See id. at 17 n.7.

While we conclude that Harris's statutory challenge was not preserved, the matter is of no import because, in any event, the claim fails at the first step of plain error analysis—that is, Harris fails to demonstrate error. Thus, his challenge fails even de novo review.

13

2. The Statutory Text and Context Do Not Support Construing Modification and Revocation as Mutually Exclusive Actions

In considering de novo whether § 3583(e) authorizes a district court that has already modified supervision conditions in response to certain conduct to revoke supervised release based on the same conduct, we begin with the statute's text because "we assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose." Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1172 (2013) (brackets and internal quotation marks omitted); see United States v. Rowland, 826 F.3d 100, 108 (2d Cir. 2016) ("If the [statute's] meaning is plain, the inquiry ends there."). As Harris implicitly acknowledges, nothing in the text of § 3583(e) states that revocation following modification must be based on different conduct. See Appellant's Br. 21–22 (noting issue "appears to remain an open question"). Instead, he urges us to infer such a requirement from the statute's use of the word "or" in § 3583(e)(3). He argues that the actions authorized in § 3583(e) thus operate only in the disjunctive, so that once a court modifies supervision conditions in response to certain conduct, it cannot then revoke supervised release based on the same conduct. We are not persuaded.

Established canons of statutory construction "ordinarily suggest that terms connected by a disjunctive be given separate meanings." Reiter v. Sonotone

Corp., 442 U.S. 330, 339 (1979); see Loughrin v. United States, 134 S. Ct. 2384, 2390 (2014) (observing that disjunctive "or" signals that "words it connects are to be given separate meanings" (internal quotation marks omitted)). This "serves to avoid interpretations that render statutory terms superfluous." Mizrahi v. Gonzales, 492 F.3d 156, 164 (2d Cir. 2007). Superfluity, however, is not a concern here because the words "modify" and "revoke," as used in § 3583(e), bear plainly different meanings—with quite different effects on liberty. Moreover, the different meanings obtain whether the actions are taken in response to the same or distinct conduct.

In any event, even when striving to ensure separate meanings, the disjunctive canon does not apply absolutely, particularly where "the context dictates otherwise." Reiter v. Sonotone Corp., 442 U.S. at 339; see Mizrahi v. Gonzales, 492 F.3d at 164 (refusing to conclude "simply from the use of the word 'or' that Congress has directly spoken to the precise question at issue," because "rule that disjunctive phrases bear different meanings is general, not absolute" and, thus, courts should "consider how a disjunctive or conjunctive form fits into the statutory scheme as a whole" (internal quotation marks omitted)). The statutory context for use of the word "or" in § 3583(e) does not indicate

Congress's intent to preclude revocation based on conduct that earlier prompted modification of supervision conditions.

This conclusion is evident from the fact that § 3583(e)(2) modification does not require that a defendant be charged with a violation of—much less be found to have violated—any particular supervision condition. Compare Fed. R. Crim. P. 32.1(b) (requiring probable cause finding of supervision violation to pursue revocation of supervised release), with Fed. R. Crim. P. 32.1(c) (requiring hearing, but no specific violation charge, to pursue modification of supervision); see United States v. King, 608 F.3d 1122, 1130 (9th Cir. 2010) (distinguishing Rule 32.1(b) revocation proceeding from Rule 32.1(c) modification proceeding based on, inter alia, former's violation-finding requirement). Rather, § 3583(e)(2) authorizes district courts to modify supervision conditions "at any time prior to the expiration or termination" of supervised release as warranted by the circumstances generally. 18 U.S.C. § 3583(e)(2). By contrast, revocation can occur only upon proof by a preponderance of the evidence that a charged condition of supervision has, in fact, been violated. See id. § 3583(e)(3). This statutory structure strongly signals Congress's intent to distinguish the two actions—revocation and modification—not by demanding that they respond to

16

different conduct, as Harris here urges, but rather, by the different charge and proof burdens assigned to each. See generally Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002) (stating that, "when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'" (quoting Russello v. United States, 464 U.S. 16, 23 (1983))). Such a structure signals Congress's intent that the action causing a greater loss of liberty—revocation—cannot be taken unless and until a higher burden of proof is satisfied. But it does not signal Congress's intent for modification and revocation to be mutually exclusive in responding to the same conduct.

Indeed, such a construction could render other provisions of 18 U.S.C. § 3583 inoperative or at least insignificant, contrary to the rule that courts must give effect to all of a statute's provisions "so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (internal quotation marks omitted). Specifically, Harris's urged construction, insofar as it would prohibit revocation in his case, would run afoul of § 3583(g)(1), which mandates revocation where, as here, a supervised

17

defendant is found to have possessed a controlled substance. See 18 U.S.C. § 3583(g)(1). It would also undermine factors properly informing supervised release, such as deterrence of criminal activity and protection of the public from such activity by the defendant. See id. § 3583(c) (citing id. § 3553(a)(2)(B)–(C) among factors relevant to determining conditions of supervised release); see also id. § 3583(e) (providing for same factors to be considered in modifying or revoking supervised release).

Pursuant to these statutory obligations, a district court advised of a supervised defendant's possible drug possession might well immediately modify supervision to impose additional conditions to increase both deterrence and protection. Then, upon actual proof of the prohibited possession, the district court would order the statutorily mandated revocation. Indeed, that is exactly what happened in this case, insofar as the district court first modified Harris's supervision to add a search condition in response to the narcotics arrest, and then revoked supervision upon actual proof of narcotics distribution. For the district court, upon learning of Harris's drug arrest, not to have modified Harris's supervision with the added search condition would have compromised deterrence and protection. Had the court, after ordering modification, failed to

18

revoke supervision upon actual proof of Harris's narcotics distribution, it would have defied the statutory mandate of § 3583(g)(1).

Thus, when we consider § 3583(e)'s use of the disjunctive in the statutory context as a whole, we conclude that it cannot reasonably be construed, as Harris urges, to preclude district courts from revoking supervised release following modification whenever both actions are informed by the same conduct.

That conclusion finds further support in Johnson v. United States, 529 U.S. 694 (2000). There, the Supreme Court held that, before § 3583(h) specifically codified the authority, § 3583(e)(3) effectively allowed a district court to impose an additional supervision term on a defendant following his completion of a prison term imposed on revocation. See id. at 712–13.[5] Recognizing that § 3583(e)(3) limited any prison term to the maximum period of supervision

---

[5] Johnson explicitly abrogated this court's contrary conclusion in United States v. Koehler, 973 F.2d 132 (2d Cir. 1992). See Johnson v. United States, 529 U.S. at 698–99 & n.2. Harris nonetheless maintains that Koehler's underlying rationale—that § 3583(e) applies disjunctively—survives Johnson. That reading does not accurately characterize the basis for our decision in Koehler. See United States v. Koehler, 973 F.2d at 135 (reasoning that, because "'[r]evoke generally means to cancel or rescind,'" revoked supervision term "'no longer exists'" and, therefore, "'revocation and extension options are by their very nature mutually exclusive'" (quoting United States v. Holmes, 954 F.2d 270, 272 (5th Cir. 1992))). In any event, modification and revocation are not "by their very nature mutually exclusive." Id.

19

originally imposed, the Court observed that, "[i]f less than the maximum has been imposed, a court presumably may, before revoking the term, extend it pursuant to § 3583(e)(2)." Id. at 712 (emphasis added). In short, by thus recognizing the possibility for both extension and revocation, the Supreme Court did not construe the numbered subsections of § 3583(e) as mutually exclusive.

Harris characterizes this part of Johnson as dictum and emphasizes that Justices Kennedy and Thomas objected to this language in brief concurrences. See id. at 713–15 (Kennedy, J., concurring); id. at 715 (Thomas, J., concurring). The observation, however, only underscores that a six-justice majority (excluding Justice Scalia, who dissented from this aspect of the decision, see id. at 715–27 (Scalia, J., dissenting)) deliberately chose to retain it. Thus, even if the statement is fairly characterized as dictum, we are obligated "'to accord great deference to Supreme Court dicta,' absent a change in the legal landscape." Newdow v. Peterson, 753 F.3d 105, 108 n.3 (2d Cir. 2014) (quoting United States v. Colasuonno, 697 F.3d 164, 179 (2d Cir. 2012)).

Harris has demonstrated no such change, and certainly none warranting a plain error conclusion. See United States v. Wagner-Dano, 679 F.3d 83, 94 (2d Cir. 2012) ("'The burden of establishing entitlement to relief for plain error is on

20

the defendant claiming it.'" (brackets omitted) (quoting <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, 82 (2004))). If anything, the post-<u>Johnson</u> landscape in this circuit suggests the contrary. <u>See, e.g.</u>, <u>United States v. Parisi</u>, 821 F.3d 343, 347–48 (2d Cir. 2016) (holding that change of circumstances is not prerequisite to additional § 3583(e)(2) modification); <u>United States v. Vargas</u>, 564 F.3d 618, 623–24 (2d Cir. 2009) (holding that, "even in the absence of a new violation," district court may extend supervised release after prior revocation); <u>see also</u> <u>id.</u> at 624 n.6 (rejecting double jeopardy challenge to post-revocation extension of supervision on ground that "'imposition of a term of supervised release is not necessarily final,' partly because a court 'may lengthen a term up to the maximum authorized amount'" (quoting <u>United States v. Pettus</u>, 303 F.3d 480, 483 (2d Cir. 2002))).

In sum, on <u>de novo</u> review, we conclude that 18 U.S.C. § 3583(e) does not preclude revocation of supervised release on the basis of conduct that earlier prompted a modification of supervision conditions. Accordingly, Harris's argument that the district court was not authorized to revoke his supervised release based on his proved narcotics trafficking violation fails on the merits.

21

C.    Hearsay Challenge

Harris argues that the district court erroneously relied on victim hearsay statements in finding that, while on federal supervision, he committed the New York state crime of assault.  Because revocation proceedings are not deemed part of a criminal prosecution, neither the Confrontation Clause nor the Federal Rules of Evidence strictly apply to out-of-court statements.  See United States v. Carthen, 681 F.3d 94, 99–100 (2d Cir. 2012).  Nevertheless, the Supreme Court has held that, in such proceedings, a defendant has "the right to confront and cross-examine adverse witnesses (unless the [court] specifically finds good cause for not allowing confrontation)."  Morrissey v. Brewer, 408 U.S. 471, 489 (1972).  That right is protected by the Federal Rules of Criminal Procedure, which state that, at a revocation hearing, a defendant is entitled to "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."  Fed. R. Crim. P. 32.1(b)(2)(C).  We have explained that the "good cause" determination underlying an interest-of-justice analysis "requires the court to balance the defendant's interest in confronting the declarant against the government's reasons for not producing the [declarant] and the reliability of the proffered hearsay."  United States v. Carthen, 681 F.3d at 100 (alterations and internal quotation marks omitted).  We review a district court's

22

Rule 32.1(b)(2)(C) ruling for abuse of discretion, which encompasses both "clearly erroneous findings of fact and misapplications of the law." United States v. Williams, 443 F.3d 35, 46 (2d Cir. 2006). Neither is evident here.

The district court found good cause for not allowing confrontation in (1) the assault victim's professed fear of retaliation, and (2) the reliability of her statements to law enforcement officers. As to the first finding, Harris argues that the court initially misunderstood the government's submission to indicate that Harris had threatened the witness. Any such concern, however, was alleviated by the prosecutor's clarification that the victim felt threatened by Harris, not that he had explicitly issued threats. Harris further speculates that the victim's refusal to appear was animated more by her own criminal conduct than her fear of retaliation by him. But that conjecture is belied by record evidence that the government offered the witness full immunity for self-disclosed criminal conduct, as well as the assistance of counsel. Indeed, the victim's professed fear of retaliation by Harris was reasonable given that (1) part of the alleged assault—the punch in the face—could itself be viewed as retaliation for the victim's complaint about the preceding smack to her buttocks, (2) the victim lived in the same neighborhood as Harris, and (3) none of their mutual neighbors had come

23

to her assistance after the assault. This was sufficient to allow the district court to conclude that there was "a possibility" of reprisal if the victim were to testify against Harris. United States v. Jones, 299 F.3d 103, 113 (2d Cir. 2002); accord United States v. Carthen, 681 F.3d at 101 (recognizing that history of domestic violence provides good cause for declarant's absence).

The district court's finding that reliability was convincingly demonstrated here is supported by evidence that (1) the victim reported the assault in a 911 call, see Navarette v. California, 134 S. Ct. 1683, 1689–90 (2014) (recognizing that possibility of tracing and identifying 911 callers provides "some safeguards against making false reports with immunity"); (2) Officer Ayala observed the victim's lacerated lip within 24 hours of the assault; and (3) the victim relayed consistent accounts of the assault—as well as her fear of reprisal—to each of the three testifying law enforcement officers, all of whom deemed her credible. See generally United States v. Jackson, 347 F. App'x 701, 703 (2d Cir. 2009) (reasoning that "reliability of both victims' hearsay accounts . . . was so convincingly demonstrated as to preclude a finding of abuse in the decision to admit their statements" despite lack of domestic violence history and one victim's recantation), cert. denied, 559 U.S. 963 (2010). In challenging reliability, Harris

points to the victim's consumption of alcohol in the hours prior to the assault. He was free to argue that the district court should consider this factor in weighing her assault account, and fails to show that his ability to do so was meaningfully undermined by the victim's failure to appear. In any event, the record indicates that the court considered the victim's consumption of alcohol in adjudicating the merits of the violation charge and explained why that factor did not undermine the reliability of her account.

Because Harris thus fails to show any abuse of discretion in the district court's Rule 32.1(b)(2)(C) ruling, his hearsay challenge fails on the merits.

## III.   **Conclusion**

To summarize, we conclude as follows:

1.      Title 18 U.S.C. § 3583(e)'s use of the disjunctive in identifying the actions a district court may take with respect to defendants serving terms of supervised release does not limit a court's authority so as to preclude it from revoking supervised release after conduct is proved that, when reported, had prompted modification of supervision conditions. Thus, the court here was authorized to revoke Harris's supervised release for proved drug trafficking pursuant to § 3583(e)(3), and as mandated by § 3583(g)(1), even though it had

previously modified Harris's supervision—upon first being advised of such possible trafficking—pursuant to § 3583(e)(2).

2.    Because the district court properly balanced Harris's confrontation interest against the assault victim's reasons for refusing to testify and the reliability of her statements, as required for an interest-of-justice finding under Fed. R. Crim. P. 32.1(b)(2)(C), the court acted within its discretion in admitting the victim's hearsay statements in determining that Harris, while on federal supervision, had committed a new state crime of assault.

The judgment of the district court revoking supervised release is, therefore, AFFIRMED.